Mr. Justice MacArthur
delivered the opinion of the court:
The question asked the witness Koontz, whether the mare for whose injury the action was brought had been in fact delivered to him, was not allowed to be answered by the court, and we think the ruling was right. Other witnesses had already stated the facts and circumstances of the delivery, and it was manifestly a question to be determined by the court and jury upon the evidence.
It is urged that the court below erred in refusing several of the instructions asked for by the defendant’s counsel, and *622 in that portion of the general charge to the jury relating to the subject of delivery. It is now well settled that whether freight has been delivered to a common carrier so as. to fix his responsibility, is a mixed question of law and fact. The circumstances that really took place must be submitted to the jury, but whether they amount in law to a delivery is properly within the province of the court. There is no doubt that delivery must transpire in order to create the liability of the railroad as a common carrier. This is usually shown by proving that the freight was sent to the place where it is the habit of the carrier to receive it, accompanied by notice to him that it is there for transportation. If there is a special agreement with the company to convey the property, the special circumstances required by the contract are to be taken into consideration; or if there is anything peculiar or exceptional in the nature of the property, that also may have a bearing upon the decision. In the present case we think the charge of the court adhered to these familiar principles.
In the remarks of the court which are excepted to, the jury are told in substance that if they believe the defendant had a yard at their depot in this city, surrounded by an inclosure and having a gate by which horses and other animals are admitted therein, and that such animals are led from this inclosure on to the platform, and then pass over a gangway into the car which is to transport them, that such inclosure is to be regarded as the place provided by the railroad company for the reception of freight of this description.
The charge then says :
“Now, then, one step further. If it should appear to you from the testimony in this case that a contract was entered into by which four horses were to be transported from this city to Baltimore by the defendant, on its railroad, and that the execution of this contract was to commence on the day following; and these horses were taken to this inclosure and admitted to it, the officers having notice that they were there for the purpose of being shipped; and if you should further believe that from the yard they were led up on to the platform ; that the process of loading had absolutely been commenced, and in a great measure completed by the shipment of three of the animals; and that the agents both of the company and of the persons who had been delegated by the owner *623 of the horses to attend them, were engaged in. this business; then I think that the facts would establish a delivery ot the animals so as to raise the strict responsibility of a common carrier in regard to them.”
This instruction is excepted to on the ground that it does not appear that the horse in question had been surrendered into the exclusive control and possession of the defendant’s agents. This objection seems to overlook the special agreement, by the terms of wliich the horses were to be accompanied by their trainer and three or four other attendants. They were valuable race-horses, and the agreement was certainly a prudent and wise one, and should be so construed as not to relieve the defendant any further than its plain import will sanction. Its reasonable and natural meaning undoubtedly is, that the defendant agrees to accept the horses and carry them and the attendants who were to accompany them on the passage. There was no waiver of the strict responsibility of the defendant as a common carrier any further than it might be modified by the fact that persons were to be sent by the owner along with the property. In the light of this interpretation the facts referred to in this part of the charge would clearly constitute a delivery. But it is further objected that the jury were also told this delivery would raise the strict responsibility of a common carrier in regard to the animals; and if the charge stopped there, perhaps the exception would prevail. But both before and after the above-cited passage, the jury were instructed that the special agreement, by the terms of which the owner was to send his servants with the property, had an important bearing upon the responsibility which the court had described to them as belonging to the character of a common carrier. On pages 14 and 15 of the printed record is the following language in the charge to the jury:
“The reception and transportation of a horse must be accompanied by different circumstances and by different incidents from the transportation of a bale, or of a box, because, to a certain extent, it is gifted with intelligence, and appetite, and volition, and is liable to sickness and death from natural causes, and when an accident occurs from any of these incidents the common carrier is not responsible. It appears from the testimony in this case that these were horses *624 of a peculiar kind, race-horses of great value, and the one injured of rare qualities; under these circumstances an arrangement of this kind is approved by motives of public policy, as well as required by the necessities and interests of individuals, that living freight, as in this instance, should be accompanied by persons employed by the owner to look after it during the journey, and it is a right as well as a righteous, concession on the part of the common carrier to recognize such arrangements and carry them out. You will at once see that this being the case it must have an important bearing upon the strict responsibility which I have described as belonging to a common carrier. Under such an arrangement the servants of the owner himself, if he accompanies their freight, are in no sense the agents of the common carrier so as to make him responsible for their conduct or misconduct. It is by an arrangement between the parties that this is permitted to be done, and, 1 apprehend, while it accommodates both, each of them must be responsible for their own acts; and the acts of a servant of the company is the act of the company itself, and the act or conduct of a servant of the owner of the property must likewise be considered in law his act, and this must be the measure and grade of their responsibilities 5 that is, each of them must be responsible for their own acts.
“When the agents of both parties are present at the occurrence of an accident and co-operating together at or about the same time, it will always involve very fine discrimination and good judgment to lay the blame where it properly attaches. That will be your duty in this case. There is no difficulty in laying down a general principle, and I instruct you that as a general principle the parties, as I have before stated, must be responsible for their own acts. If the accident occurred through want of skill or from negligence of the agents of the company, they are liable for any damage.
“If the accident occurred through the conduct or the acts of the agent of the owner, the company would not be responsible.
“Now, this is the general principle which I think should regulate, and which I instruct you in matter of law does regulate, the liability and responsibility of these parties in a case-of this description.”
*625 Now, while the portion of the charge excepted to lays down a general principle in the case, it is of course to be taken with the qualifications just read. What is material cannot all be said at the same time, and the different parts are to be considered in order to obtain a fair exposition of the whole. It is quite clear from this examination that while the jury were informed of the circumstances which would show a delivery and fix upon the defendant the liability of a eommon carrier, yet they were also told that as in this case there was a special contract for the transportation of the horses, the conduct of the owner’s servants might be inquired into, and if their act or negligence caused the accident, the defendant was not responsible. It was also left to the jury to decide whether there was a delivery, for there must be á delivery before the plaintiffs could recover, and that the defendant was only liable for the conduct of its own agents. Upon this view We are inclined to think that there was no error in the charge.
We believe that these observations dispose of all the prayers of the defendant that were-refused except, perhaps, the fourth one. Ey this prayer the jury were to be instructed that if the plaintiff’s agent declined to deliver the znare to defendant’s agent the company would not be liable if said agent forbade efforts to ship the mare, and she suffered the injury complained of by the acts of the plaintiff’s agents or of other parties in an attempt to load her. This was simply saying if there was no delivery there was no liability, and the jury were told this more than once, no matter how the injury happened or by whom or what it was occasioned. The prayer is rather complicated in the hypothetical assumption of facts and would have confused if not misled the jury. They had been informed in the prayer immediately preceding that the plaintiff could not recover without proving that he delivered the mare to the defendant. The same thing was repeated in the charge. So that it matters not what were the orders of the defendant’s agent, or whether the plaintiff’s servants or others caused the injury, in the absence of delivery. The viee of the prayer is that it involved the consideration of circumstances wholly immaterial if there was no delivery.
Upon the whole, we are not disposed to disturb the judgment.